IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMMANUEL O. BROOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-0818-MJR-SCW |
| | ) |
| JOHN MICH and | ) |
| KENNETH DONNALS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

I.  INTRODUCTION

In July of 2016, Emmanuel Brooks, then an inmate at Menard Correctional Center, filed suit in this Court under 42 U.S.C. 1983. After his initial pro se complaint was dismissed for failure to state a claim on which relief could be granted, Brooks amended his complaint (*see* Docs. 10, 12). On threshold review of the amended complaint in December 2016, the undersigned dismissed a claim against one named Defendant (Warden Kim Butler) and concluded that Brooks had stated cognizable Eighth Amendment claims for failure to protect him from harm at the hands of his former cellmate against correctional officers Kenneth Donnals and John Mich (*see* Doc. 14). Donnals and Mich (collectively, "Defendants") answered the complaint in February 2016. The answer included the affirmative defense, inter alia, that Plaintiff Brooks had failed to exhaust all administrative remedies before filing this suit (Doc. 20, p. 8).

In July 2017, Defendants moved for summary judgment on the basis of exhaustion. The Honorable Stephen C. Williams, the Magistrate Judge to whom the case is referred for pretrial proceedings, conducted a status conference on the issue in September 2017 (with Brooks, by then incarcerated at Danville Correctional Center) participating via videoconference. Judge Williams ordered Defendants to produce certain documents relevant to the question of whether Brooks had exhausted his administrative remedies before filing this action.

In October 2017, Judge Williams held an evidentiary hearing on Defendants' summary judgment motion, again with Plaintiff Brooks participating by videoconference. Judge Williams heard Plaintiff's testimony, received exhibits, ordered a transcript prepared, and took the matter under advisement. Now before the Court is a Report and Recommendation issued by Judge Williams (Doc. 45, the "R&R"), to which Plaintiff Brooks timely objected twice (Docs. 46, 48), and Defendants responded on November 22, 2017 (Doc. 50). Analysis begins with reference to the standards governing Defendants' exhaustion-based summary judgment motion.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P.**

**56(a).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986),** *quoting* FED R. CIV. P. 56(e)(2). A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.**

Generally a district court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter. It is only to determine whether a general issue of triable fact exists. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**. A slightly different standard applies to summary judgment on the issue of exhaustion.

A motion for summary judgment based upon failure to exhaust administrative remedies often involves a hearing to determine contested issues regarding exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested

issue of exhaustion is resolved. *Pavey*, **544 F.3d at 742.** In the case at bar, Judge Williams conducted a hearing in light of contested factual issues (see Doc. 45, p. 5). Plaintiff testified at the hearing, specifically addressing the issue of a grievance at the heart of the dispute here – his October 23, 2015 grievance relating to a request to be moved from his cell at Menard, away from cellmate D. Sankey – as well as two grievances filed in 2016 related to law library access. The undersigned has reviewed the transcript prepared from the October 19, 2017 hearing before Judge Williams.

### B. Exhaustion Under the PLRA

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Department of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock,* **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[1]

---

[1] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence

The Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)** (**'This circuit has taken a strict compliance approach to exhaustion").** "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, **534 U.S. 516, 524 (2002).** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001).**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process; he may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed

---

"outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* **Fed. R. Civ. P. 12(d).**

prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. *Perez*, **182 F.3d at 535.**[2]

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. ***Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).** "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. ***Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).** Where failure to exhaust has been raised as an affirmative defense (i.e., exhaustion is contested, as in the instant case), the district court should follow this sequence (*id.,* **544 F.3d at 742)**:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.
> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.
> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

---

[2] Exhaustion-based dismissals under the PLRA must be *without* prejudice, even if exhausting now may prove to be impossible. *See, e.g., Fluker v. County of Kankakee,* **741 F.3d 787, 791-92 (7th Cir. 2013),** *citing Ford v. Johnson,* **362 F.3d 395, 400-01 (7th Cir. 2004).**

The PLRA's exhaustion requirement is dependent upon the procedures established by the state in which the prison is located. *Jones*, **549 U.S. at 218.** Plaintiff was confined at Menard Correctional Center when he filed this suit and later at Jacksonville Correctional Center and Danville Correctional Center, all within the Illinois Department of Corrections (IDOC).

C. <u>**Exhaustion Under Illinois Law**</u>

As an IDOC inmate, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. **20 Ill. Admin. Code 504.800,** *et seq*. The grievance procedures first require inmates to speak with their Counselor about the issue or problem. **20 Ill. Admin. Code 504.810(a).** If the Counselor does not resolve the issue, the inmate must file a grievance within sixty days of the events or occurrence with the Grievance Officer. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ... [who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin.**

**Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB.

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after

reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).** A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB. **20 Ill. Adm. Code 504.870**. Those circumstances include grievances addressing (1) placement in protective custody, (2) involuntary administration of psychotropic medication, (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides, and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.*

### III.   ANALYSIS

The gist of Emmanuel Brooks' claims herein is that, while he was incarcerated at Menard, Defendants failed to protect him from harm a violent cellmate named Sankey. The background allegations are as follows.

On the morning of September 24, 2016, Brooks awoke to the sounds of Sankey slamming items around the cell. Other inmates nearby heard the racket, told Sankey to quiet down, and exchanged heated words with Sankey. Fearing for his safety given his cellmate's outburst, Brooks penned his concerns on a slip of paper he tried to pass through the cell door to correctional officer Donnals. Donnals told Brooks to give the slip to Defendant Mich when he went to chow. Brooks tried to do so. Mich read the slip aloud and falsely added that Sankey was trying to "rape" Brooks. After chow,

Brooks again spoke to Mich about his fear of Sankey. Mich told Brooks to go back to his cell. Shortly thereafter, Donnals locked Brooks and Sankey into the cell and took away their identification cards.

Angered, Sankey began to beat Brooks with a fan. Brooks was able to get the fan away from Sankey but things worsened when Sankey produced a razor-like blade, shoved Brooks to the floor of the cell, and started cutting Brooks. Neighboring inmates called for help in vain. Sankey stopped after tiring from his attack on Brooks. Donnals arrived at the cell a few hours later and found Sankey and Brooks wounded and bloody. Brooks was taken to the healthcare unit and treated for his injuries.

On October 23, 2015, Brooks wrote a grievance regarding the events of September 24, 2015. Attached to Brooks' amended complaint, the **10-23-15 grievance** indicates that it relates to staff conduct and a disciplinary ticket issued to Brooks on September 24, 2015, while he was in the healthcare unit. The grievance explains the sequence of events leading up to the attack he suffered at the hands of his cellmate, including Brooks' attempt to submit a kite regarding his "need to be moved out of the cell A.S.A.P," the fact that he was told to give the kite to the "C.O. in the white shirt" (Mich), how Mich read the kite out loud and acted like Brooks was accusing Sankey of rape, how Donnals took away Sankey and Brooks' ID cards, how Sankey got enraged and beat and cut Brooks, how despite cries for help from other inmates, no C.O. came to Brooks' aid, and how instead he was taken to healthcare for 24 hours, after which he was given a disciplinary ticket for "fighting" and placed in segregation for 30 days (Doc. 12, p. 10).

The question before the Court is whether Brooks' exhausted his administrative remedies before commencing this lawsuit. As detailed above, Brooks 10-23-15 grievance was received by the grievance officer, Kelly Pierce, on October 29, 2015. Pierce reviewed the grievance on January 21, 2016 and recommended that the grievance be declared "moot" and that no further action be taken at that time (Doc. 12, p. 11). Warden Butler received the recommendation on January 28, 2016 and concurred with the grievance officer's recommendation on February 2, 2016 (*id.*).

In the meantime, a grievance nearly identical to the 10-23-15 grievance was received by the ARB on November 9, 2015. It was returned to Brooks on November 24, 2015, because he had not provided a copy of the response from the grievance officer and administrative officer. The record before the Court indicates that Brooks submitted two other grievances later – one dated June 13, 2016 and one dated October 3, 2016. Both of those related to denial of law library access, not the events of September 24, 2015 involving the failure to protect Brooks from his cellmate.

At the hearing held by Judge Williams two months ago in this case, Brooks testified regarding his 10-23-15 grievance. Brooks had arrived at Menard roughly six weeks prior to that incident. Brooks did not recall ever getting an orientation manual at Menard, either in the receiving unit or the medium security unit.[3] That is potentially relevant, because (a) the Offender Orientation Manual outlines the grievance process,

---

[3] Brooks did recall receiving an orientation manual at Jacksonville Correctional Center and at Danville Correctional Center.

(b) Brooks did not follow the proper steps with his 10-23-15 grievance, and (c) he attributes that failure to the fact he was *unaware* of the steps in the process.[4] The undersigned rejects the argument that Brooks did not know how to exhaust his grievance.

Brooks submitted his 10-23-15 grievance in a timely manner to the proper person – his grievance officer. The grievance officer (Pierce) considered the 10-23-15 grievance and reported her recommendations to the CAO (Warden Butler) who notified Brooks in writing of her decision within the allotted time frame. Then it was up to Brooks, if not satisfied with Butler's response, to file an appeal with the Director through the ARB within 30 days, attaching copies of the grievance officer's report and CAO's decision to the appeal. *See* **20 Ill. Admin. Code 504.850(a).** Brooks never took this critical step.

Even without an orientation manual, Brooks was on notice of the appeal step in the process. He admitted that he received the CAO's response on February 2, 2016. That sheet (Doc. 12, p. 11) has a section marked "Offender's Appeal to the Director" which explains that the inmate has only 30 days after receiving the CAO's decision to file an appeal with the ARB (and attach thereto the original grievance and other pertinent documents). The address to which the inmate would send his appeal to the ARB is provided on that document as well. In the hearing before Judge Williams, Brooks acknowledged that this information was on the grievance report forms and

---

[4] Additionally, Brooks maintained (in response to Defendants' summary judgment motion) that his lack of library access thwarted his ability to fully exhaust his 10-23-15 grievance. Judge Williams specifically found Brooks' testimony regarding denied library access to be *not* credible (Doc. 45, p. 12), and Brooks did not rely on this ground in his objections to the R&R.

acknowledged that he had read this portion. So, he was on notice of how and when to file the appeal with the ARB, if he was unhappy with the CAO's response.

Additionally, as noted above, after submitting his 10-23-15 grievance to the grievance officer, Brooks prematurely sent the same grievance *directly* to the ARB. The ARB received it on November 9, 2015 and returned it to Brooks on November 24, 2015 with explicit instructions. Brooks acknowledged receiving the ARB's response on or around November 24, 2015. The ARB marked the box stating that they needed more information from Brooks (i.e., the grievance officer's recommendation and the CAO's response). Brooks did not follow up to furnish that information.

Although Brooks submitted the 10-23-15 to both his grievance officer and the ARB, he did not make these submissions in the proper sequence. He submitted the grievance at the same time to both the institution and the ARB. After receiving the institution's response on February 2, 2016, Brooks had 30 days to file an appeal *from that response* with the ARB. He failed to do so. The undersigned concludes, as did Judge Williams, that Brooks read and could understand the language on the forms which explained how to appeal to the ARB, that Brooks was aware of the appeal-to-the-ARB step in the grievance process, and that he failed to complete the process.

In his objections to Judge Williams' R&R, Brooks reiterates that he was "without knowledge of the proper chain of command to submit the grievance" and "appeal" (Doc. 46, p. 1, Doc. 48, p. 1). For the reasons stated above, the undersigned disagrees. The forms in evidence and Brooks' testimony at the hearing before Judge Williams indicate that Brooks had access to information regarding the need to appeal,

the deadline for doing so, and the need to attach copies of the grievance and the counselor's response, etc. As Judge Williams succinctly put it (Doc. 45, p. 13):

> Plaintiff had all of the information he needed to determine how to appeal his grievance to the ARB. The instructions were clearly and simply set forth on the response from the [CAO], and the ARB's response informed Plaintiff what documents he needed to submit to the ARB…. [I]t appears that Plaintiff simply chose not to appeal the grievance.

While the undersigned finds troubling the actions allegedly taken by the correctional officers involved in the September 24, 2015 incident, Brooks failed to exhaust all steps in the administrative process available to him. This failure to exhaust administrative remedies mandates dismissal of the claims advanced in this case.

## IV. CONCLUSION

For the reasons stated above, the Court overrules Plaintiff's objections (Docs. 46, 48), adopts in its entirety Judge Williams' R&R (Doc. 45), **GRANTS** the *Pavey*-based summary motion (Doc. 23), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendants Mich and Donnals. No claims remain herein, the claims against Defendant Butler having been dismissed without prejudice in the December 6, 2016 threshold Order. The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

DATED: December 21, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge